**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES R.,[1] | |
| Plaintiff, | CIVIL NO. 1:24-CV-00637 |
| v. | (LATELLA, M.J.) |
| FRANK BISIGNANO, | |
| Defendant. | |

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Charles R.'s claims for a period of disability and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act. For the reasons expressed herein, and

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be affirmed.

## 1. Background and Procedural History

On December 6, 2021, Plaintiff Charles R. ("Mr. R.") filed applications for Title II and Title XVI benefits, respectively. (Doc. 9-5 at 2, 9)[2]. In these applications, Mr. R. claimed disability beginning March 13, 2021. (*Id.*). The Social Security Administration initially denied Mr. R.'s claims on March 9, 2022. (Doc. 9-3 at 2, 3). Mr. R. filed a request for a hearing before an Administrative Law Judge ("ALJ") on October 11, 2022. (Doc. 9-4 at 29, 30). ALJ Randy Riley conducted the requested hearing on April 20, 2023. (Doc. 9-2 at 37).

In a written opinion dated May 16, 2023, the ALJ determined that Mr. R. is not disabled and therefore not entitled to the benefits sought. (Doc. 9-2 at 9). Mr. R. appealed the ALJ's decision to the Appeals Council, which, on February 26, 2024, denied Mr. R.'s request for review. (Doc. 9-2 at 2). On April 12, 2024, Mr. R. filed the instant

[2] For the sake of clarity, we refer in all instances to the ECF document numbers and pagination.

action. (Doc. 1). The Commissioner responded on June 3, 2024, providing the requisite transcripts from the disability proceedings on April 20, 2023. (Doc. 8; Doc. 9). The parties then filed their respective briefs (Doc. 16; Doc. 18; Doc. 21), with Mr. R. alleging 3 errors warranting reversal or remand.[3] (Doc. 16 at 1).

### 2. THE ALJ'S DECISION

In a decision dated May 16, 2023, the ALJ determined Mr. R. "has not been under a disability, as defined in the Social Security Act, from March 13, 2021, through the date of this decision." (Doc. 9-2 at 24). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The ALJ determined that Mr. R. met the insured status requirements of the Social Security Act through December 31, 2026. (Doc. 9-2 at 14).

[3] On April 24, 2024, the parties consented to proceed before a unites states magistrate judge. (Doc. 7). On June 16, 2025, we provided notice to the parties of our intent to continue to exercise the jurisdiction previously consented to by the parties absent any express objection. (Doc. 22). No such objection was filed.

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b); 416.920. SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. §§ 404.1572; 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574; 416.974. The ALJ determined Mr. R. "has not engaged in [SGA] since March 13, 2021, the alleged onset date." (Doc. 9-2 at 14). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. §§ 404.1520(c);

416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Mr. R. has the following severe impairments: obesity, obstructive sleep apnea, lumbar facet joint arthropathy, cervical degenerative disc disease, left shoulder osteoarthritis and tendon RTC repair with left bicep repair, asthma/COPD, bilateral carpal tunnel syndrome, and varicose veins. (Doc. 9-2 at 15). The ALJ also identified Mr. R's non-severe impairments as: hypertension, hyperlipidemia, thyroid disorder, history of transient ischemic accident, tremor, restless leg syndrome (RLS), urinary incontinence, gallstones, and gastroesophageal reflux disease (GERD). (Doc. 9-2 at 15).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii); 416.920(a)(4)(iii). The ALJ determined that none of Mr. R.'s impairments, considered individually or in combination, met or equaled a Listing. (Doc. 9-2 at

16). Specifically, the ALJ considered Listing 1.15, disorders of the skeletal spine resulting in compromise of the nerve root, Listing 1.16, lumbar stenosis resulting in compromise of the cauda equina, Listing 1.18, abnormality of a major joint(s) in any extremity, Listing 11.14, peripheral neuropathy, and 4.11, chronic venous insufficiency.

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. The ALJ determined that Mr. R. has the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with frequent climbing ramps and stairs, balancing, stooping, kneeling, and crouching and occasional crawling but never climbing ladders, ropes, or scaffolds. He is limited to never reaching overhead with the left upper extremity and to occasional feel with the bilateral hands. He must avoid exposure to extreme cold, wetness, vibration, irritants, and unprotected heights.

(Doc. 9-2 at 17).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. §

404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b); 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined Mr. R. is unable to perform past relevant work. (9-2 at 22). The ALJ noted past relevant work as a fast-food manager and quality assurance monitor, but the exertional requirements of each exceeded Mr. R.'s RFC. (Doc. 9-2 at 22).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to

other work, they will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

The ALJ made vocational determinations that Mr. R. was 50 years old on the alleged onset date, defined as a an individual closely approaching advanced age by the Regulations. 20 C.F.R. §§ 404.1563; 416.963. (Doc. 9-2 at 22). The ALJ also noted that Mr. R. "has a limited education" as considered in 20 C.F.R. §§ 404.1564; 416.964. (Doc. 9-2 at 22). The ALJ determined that upon consideration of these factors, Mr. R.'s RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Doc. 9-2 at 23). The ALJ specifically identified occupations of marker, office helper, order caller, and information clerk. (*Id.*).

As a result of this analysis, the ALJ determined that Mr. R. was not disabled and denied Mr. R.'s applications for benefits. (Doc. 9-2 at 23).

### 3. Standard of Review

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether

the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v.*

*Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question

before the Court, therefore, is not whether Mr. R. is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## 4. Discussion

Mr. R. alleges three errors that he claims merit reversal or remand. First, he claims that the ALJ failed to properly evaluate the opinion of A. Kneifati, M.D., the consultative examiner. Second, he argues that substantial evidence does not support the ALJ's RFC assessment. Finally, he claims that "the ALJ's multiple errors with

symptom evaluation compel reversal." We will address each argument in turn.

### A. The ALJ's Assessment of Dr. Kneifati's Opinion

Mr. R. argues that the ALJ improperly found Dr. Kneifati's opinion unpersuasive. (Doc. 16 at 9-11). Plaintiff argues that contrary to the ALJ's finding, Dr. Kneifati's opinion is supported by his own observations and consistent with other medical records. (*Id.*). Further, Mr. R. notes that the ALJ's speculation that Dr. Kneifati relied upon Mr. R.'s subjective reports should be discounted because Dr. Kneifati had "no motivation to author a favorable opinion out of sympathy for a stranger he evaluated once." (*Id*. at 13).

In response, the Commissioner asserts that Mr. R.'s arguments should be rejected because the record did not credibly support greater restrictions than those identified by the ALJ. (Doc. 18 at 10). The Commissioner argues that the ALJ correctly applied the new regulations and explained why Dr. Kneifati's opinion was not persuasive. (*Id*. at 13).

Mr. R. filed his disability applications on December 6, 2021, after the Social Security Regulations regarding consideration of medical

opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. *See Alexandre v. Bisignano*, No. 1:24-CV-1785, 2025 WL 2045186, at *7 (M.D. Pa. July 21, 2025). However, in March of 2017, the regulations governing the treatment of medical opinions were amended. *Id.* Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. *Id.* (citing 20 C.F.R. § 404.1520c(c)). The change to the consideration of medical opinion evidence has been summarized as follows:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the

Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id. at §§* 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative

> medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).
>
> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

*Fallin v. Bisignano*, No. 4:24-CV-180, 2025 WL 1749654, at *8–9 (M.D. Pa. June 24, 2025) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020)).

When presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for

the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Mason*, 994 F.2d at 1066). Provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. *See Thackara v. Colvin*, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); *Turner v. Colvin*, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); *Connors v. Astrue*, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. *See e.g., Thackara v. Colvin*, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

*Fernandez v. Bisignano*, No. 4:24-CV-412, 2025 WL 1427049, at *10 (M.D. Pa. May 15, 2025). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's

decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). "Thus, our inquiry is not whether evidence existed from which the ALJ could have drawn a contrary conclusion, but rather whether substantial evidence existed in the record to support the ALJ's decision to credit or discredit each medical opinion, and whether the ALJ appropriately articulated his decision under the regulations." *Hajdarevic v. Dudek*, No. 3:24-CV-00636, 2025 WL 1004377, at *17 (M.D. Pa. Apr. 3, 2025).

Here, the ALJ found the opinion of Dr. Kneifati not persuasive. (Doc. 9-2 at 21). The ALJ noted that the opinion "appears to rely more on the subjective reporting of the claimant and is not consistent with the objective clinical findings and longitudinal medical records." (*Id.*). The ALJ further noted that, "the limitations are not supported by Dr. Kneifati's own clinical examination findings of normal gait, normal strength in the upper and lower extremities, no sensation deficits, and full hand and finger dexterity with an ability to zip, button, and tie laces." (*Id.*). Finally, the ALJ noted that that "Dr. Kneifati's opinion is based on a one-time examination with the claimant and a review of

some medical records provided to Dr. Kneifati prior to the February 2022 examination." (*Id*. at 22).

Earlier in the ALJ's opinion, he summarized the documentation of Dr. Kneifati's consultative exam as follows:

> The claimant presented with breathing issues causing shortness of breath and fatigue with exertion that limited walking to twenty minutes of flat surfaces. He also reported having pain and limited range of motion in the left shoulder even after surgery in 2021. The claimant reported having right-sided arm and leg issues. The claimant noted cooking once per week and needing assistance with dressing and showering. Dr. Kneifati noted that the claimant was not in acute distress and observed the claimant walking with a normal gait and on heels and toes without difficulty, which does not support the claimant's allegation of balancing issues. He squatted fifty-five percent. His stance was normal. The claimant did not use an assistive device moving around the examination room or require help getting on and off the examination table. He rose from a chair without difficulty. Chest and lungs were normal. Breath sounds were clear to auscultation. Straight leg raise was normal bilaterally supine and seated. He had a flexion contracture in the little finger on right hand from an injury when he was four years old, but the remainder of the hands were normal. He had full grip strength bilaterally and good ranges of motion in the hands and wrists. He had full dexterity with an ability to zip, button, and tie laces. Deep tendon reflexes were psychologic and

> equal in the upper and lower extremities. There were no sensory deficits, and strength was five out of five in the upper and lower extremities with no muscle atrophy. Ranges of motion were normal throughout the body except for some decreased ranges of motion in the left shoulder. X-rays of the left shoulder shows the joint space is well maintained with a surgical anchor overlying the greater tuberosity.

(Doc. 9-2 at 19-20).

The ALJ's explanation as to his conclusion regarding Dr. Kneifati's opinion was sufficient. As detailed *supra*, the ALJ thoroughly summarized Dr. Kneifati's documentation of his examination of Plaintiff. (Doc. 9-2 at 19-20). He also addressed the "two most important" factors of consistency and supportability. (Doc. 9-2 at 21-22); *see also Fallin*, 2025 WL 1749654, at *8–9. The ALJ noted that the limitations assessed by Dr. Kneifati were not supported by Dr. Kneifati's own clinical examination findings, including normal gait, normal strength in the upper and lower extremities, no sensation deficits, and full hand and finger dexterity with an ability to zip, button, and tie laces. (*Id.*). Additionally, the ALJ noted that the assessed limitations were not consistent with objective clinical findings and longitudinal medical records, which the ALJ summarized earlier in the

opinion. (*Id.*). While Plaintiff identifies certain findings that may support a contrary conclusion (Doc. 16 at 10), those findings "do not undermine the Commissioner's decision" as the record provides substantial support for the decision. *Malloy*, 306 F. App'x at 764. Because the ALJ appropriately articulated the basis for his finding that Dr. Kneifati's opinion is not persuasive and substantial evidence in the record supports that decision, we are unable to say that reversal or remand is warranted on this basis.

### B. Substantial Evidence Supports the ALJ's RFC Assessment

Mr. R. next argues that the ALJ failed to properly address Mr. R.'s handling and fingering limitations in determining his RFC. (Doc. 16 at 14). In response, the Commissioner maintains that the ALJ explained that the longitudinal records showed good dexterity in the hands despite decreased sensation in the fingers and that the ALJ added a limitation regarding occasional bilateral feeling due to the alleged numbness in Mr. R.'s hands from carpal tunnel syndrome. (Doc. 18 at 14).

While a claimant's RFC measures “the most [she] can do despite [her] limitations,” *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014), an ALJ’s statement of limitations must sufficiently reflect all of a claimant’s impairments. *Hess v. Commissioner of Social Security*, 931 F. 3d 198, 210 (3d Cir. 2019).

Substantial evidence supports the ALJ’s assessment of Plaintiff’s limitations regarding handling and fingering and that the RFC adequately accounts for Plaintiff’s limitations. The ALJ acknowledged Plaintiff’s report that of a lack of feeling in his hands. (Doc. 9-2 at 18). However, the ALJ also concluded that, while he found Mr. R.’s “medically determinable impairments could reasonably be expected to cause the alleged symptoms,” he found that Mr. R.’s “statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.” (Doc. 9-2 at 18).

The ALJ noted that Plaintiff continued to report left hand numbness following surgery on his left shoulder in August 2021, but also noted that Plaintiff was able to remove a gallon of milk from the refrigerator. (Doc. 9-2 at 18). The ALJ further discussed medical

records relating to Plaintiff's hand numbness and tingling, noting that after left carpal tunnel release surgery in March 2022, his paresthesia in his left hand was not resolved, but that he achieved full digit flexion and extension "well without difficulty or tenderness." (*Id*. at 19). He added that "[m]onofilament testing was positive greater than 6.65 to all digits," and that "Orthopedics noted that the claimant has good motor control and no muscle atrophy despite alleging no sensation in all the fingers." (*Id*.). Further, the ALJ stated, "minimal EMG findings also do not account for the allegations of no sensation in the fingers" and noted that "fine motor movements are performed well." (*Id*.). Finally, the ALJ noted that Dr. Kneifati's consultative examination report documented "full grip strength bilaterally" and "full dexterity with an ability to zip, button, and tie laces."

Therefore, the ALJ's assessment of Plaintiff's handling and fingering and decision to include a limitation providing for occasional bilateral feeling is supported by substantial evidence and does not require reversal or remand.

C. <u>The ALJ's Symptom Evaluation</u>

In Plaintiff's final claim, he posits numerous arguments. First, he argues that the ALJ failed to discuss how certain positive objective findings failed to support Plaintiff's allegations. (Doc. 16 at 18). Next, he argues that the ALJ characterized Plaintiff's treatment as routine and conservative notwithstanding the fact that Plaintiff underwent various surgical procedures. (*Id*. at 19). Finally, Plaintiff claims that the ALJ noted that Mr. R. responded well to treatment, but failed to consider that Plaintiff's left upper extremity pain did not improve with treatment. (*Id*.).

The Commissioner responds by arguing that the Plaintiff's attempt to have this court reweigh the evidence should be rejected. (Doc. 18 at 16).

On this point, the Commissioner is correct. None of the arguments raised in Plaintiff's final claim warrant reversal or remand. As to his first contention, contrary to Plaintiff's claim, the ALJ acknowledged many objective findings including bilateral upper extremity paresthesia (Doc. 9-2 at 16-17) and limited left should range of motion (Doc. 9-2 at 18). However, the ALJ included such findings

within a more comprehensive assessment of each of Plaintiff's alleged impairments. (*See* Doc. 9-2 at 17-20). As the Commissioner correctly points out, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." (Doc. 18 at 16-27) (quoting M*alloy*, 306 F. App'x at 764. Here, the decision is supported by substantial evidence and the presence of objective findings in some instances does not undermine the ALJ's decision.

We are likewise not persuaded that the ALJ's reference to Plaintiff's treatment as "essentially routine and conservative" requires remand or reversal. Notwithstanding this albeit inaccurate description in a conclusory paragraph of the ALJ's opinion, the ALJ thoroughly discussed Plaintiff's 2021 left shoulder surgery and March 2022 carpal tunnel release procedure elsewhere in the opinion. (Doc. 9-2 at 18-19). The ALJ indeed considered those procedures in reaching his conclusion.

Similarly, the ALJ's statement that Plaintiff responded well to treatment does not compel reversal or remand. The ALJ stated that Plaintiff "responded well to medication management for various impairments." (Doc. 9-2 at 20). Again, this statement was made in a

conclusory paragraph of the ALJ's opinion and cannot be read to suggest that he achieved total pain relief in his left shoulder following surgery or improvement in paresthesia following a carpal tunnel release procedure, where elsewhere in the ALJ's opinion, he discusses medical records stating the contrary.

Accordingly, we are not persuaded that Plaintiff's final claim merits remand or reversal.

**5. CONCLUSION**

Based on the foregoing, the decision of the Commissioner will be affirmed. An appropriate order follows.

Dated: September 2, 2026

s/ Leo A. Latella
**LEO A. LATELLA**
**United States Magistrate Judge**